**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **Case No: 8:21-CR-00030-GLS** |
| v. | : | |
| | : | **The Hon. Gina L. Simms** |
| VENKATESH RAO, | : | |
| | : | **Sentencing Date:  May 28, 2021** |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW the defendant, Venkatesh Rao, by and through undersigned counsel, and in accordance with 18 U.S.C. § 3553(a) and § 6Al.2 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), respectfully submits to this Honorable Court his position regarding sentencing factors he believes support a sentence of between six and 12 months of probation. In short, in light of his early plea, history of work, public service, his remorse, nonexistent prior contact with the criminal justice system, the contributing factors behind this crime and the fact that he now stands convicted of a crime of theft and will suffer the many adverse consequences attached thereto, we respectfully suggest that a sentence of probation is appropriate and meets all the goals of federal sentencing.

## INTRODUCTION

Mr. Rao comes before the Court for sentencing having entered a guilty plea to a one count Information charging him with Theft of Government Property, a misdemeanor, in violation of 18 U.S.C. § 641. He brings with him an immeasurable amount of regret, remorse, sorrow, humiliation and despair for his conduct in this case.[1] To those who know Mr. Rao it is inconceivable that he would stand accused of any offense, much less one involving theft or any

---

[1] *See*, Exhibit One, Mr. Rao's letter to the Court.

crime of mortal turpitude, given that he grew up in a family that stressed good behavior, academic achievement, and moral and religious values. Indeed, when the Court considers his upbringing, background and actions in this case, it is quite clear that Mr. Rao is not the typical **criminal defendant.**

In fact this is not an ordinary criminal case. It is an extraordinary one in which justice can be achieved only with a full understanding of the unusual circumstances that surrounded Mr. Rao's actions and the crime itself.  The undisputed facts are as follows: After almost 28 years in the federal civil service, the last nine of which were with the Federal Reserve, in November, 2019, Mr. Rao was advised of a negative performance review and was given three weeks to decide whether to retire or attempt to demonstrate a satisfactory performance on a remediation project. During that three-week period Mr. Rao was overwhelmed with conflicting emotions, including disbelief, hurt and panic. At age 66, he ultimately decided to retire. In the days leading to his departure date he printed documents that he had authored or co-authored and took those home. As he readily admits, he did not have permission to take these documents.

On May 20, 2020, the Office of the Inspector General, Board of Governors of the Federal Reserve System, obtained a Search Warrant from this Court to search Mr. Rao's home; and on May 28, 2020, some six months after Mr. Rao retired, the search warrant was executed. Mr. Rao voluntarily handed over the box in which the documents had been stored for the preceding six months.

When questioned, Mr. Rao waived his right to counsel and not only answered every question put to him, but in narrative form freely confessed to the taking of the documents in question.

In February 2021, the Assistant United States Attorney assigned to this case reached out

to below-signed and offered to resolve the matter by way of a pre-indictment plea to one count of Theft of Government Property, a misdemeanor.  Knowing it was wrong, and illegal, for him to have brought documents home without permission, Mr. Rao accepted the plea offer, accepted responsibility for his actions and entered the guilty plea before Your Honor; and to this day he feels immeasurable remorse.

We respectfully submit that the charge in this case is inconsistent and inapposite to the type of person that Venkatesh Rao truly is. Nevertheless, his actions in this case were wrong and unjustifiable; but, as the Court will see from the letters attached, the presentence report and what follows in this memorandum, he is not a heartless thief, nor is he even a remote threat to the community, one that he has faithfully served as a public servant for years. In pleading guilty, he has taken full responsibility for his actions.

The question before the Court is how justice can best be served in this particular case. The Court must of course consider the Advisory Sentencing Guidelines,[2] but it also must take into account all of the circumstances of the offense and all of the characteristics of Mr. Rao. The defense submits that the path to justice in this case is clear - sentence Mr. Rao to a term of from six to 12 months of probation and attach any conditions to probation that the Court feels are advisable. But do not incarcerate Mr. Rao. Justice can be achieved only if the law has a conscience, a sense of what is right and what is wrong.  Putting Mr. Rao in prison, we suggest, would be wrong. The defense urges the Court to reject that course.

**ARGUMENT**

---

[2] The guideline range into which Mr. Rao falls (Offense level 4, Criminal History I) carries 0-6 months as a suggested sentence; and, for this counsel, it is not only rare, but also unheard of for a first offender charged with a misdemeanor to be sentenced to prison. However, this misdemeanor is charged in federal court and it would be presumptuous for us to appear for sentencing assuming the Court felt the same. Thus, we submit this memorandum.

For the reasons discussed below, we respectfully submit that a period of six to 12 months of probation is the appropriate sentence in this case. The Court, after a consideration of this crime, Mr. Rao's background and the advisory sentencing guidelines, as well as the purposes of sentencing should, we submit, reach the same conclusion.

I.   **The Advisory Sentencing Guideline Range**

One of the first steps in sentencing is obviously a consideration of the applicable advisory guideline range. The probation office, we believe, has correctly computed the guideline range to be 0-6 months - a range determined by a Criminal Offense Level of 4 in a Criminal History Category I. (PSR at 4-5) This range was reached by using U.S.S.G. § 2B1.1(a)(2) which resulted in a base and final (i.e., no increase based on monetary loss) offense level of 6. After applying a two-level reduction pursuant to U.S.S.G. § 3E1.1(a), for Mr. Rao's prompt recognition and affirmative acceptance of personal responsibility of his conduct, the final offense level is 4; and this level is so low that it could be doubled and Mr. Rao would still be in a 0-6 guideline range.

Identifying the applicable advisory guidelines range is, of course, only the first step. Although the Court should include the guidelines range in the array of factors warranting consideration as it determines an appropriate sentence, it is also the Court's important prerogative to decide independently how much persuasive authority the advisory guidelines range should receive in a particular case.

As the Court weighs the other sentencing factors, we submit that it should use its discretion to sentence at the low end of the range and place Mr. Rao on probation for a period of from six to 12 months.[3]

II.   **The Other Sentencing Factors**

_____

[3] U.S.S.G. § 5B1.2 (a) provides if probation is imposed by the court it must be at least one year but not more than five years if the offense level is 6 or greater, but simply "no more that three years in any other case." 5B1.2(a)(2).

4

Aside from a consideration of the advisory guidelines, courts have traditionally looked at a variety of other considerations when attempting to determine an appropriate sentence, including the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. And, it goes without saying, that in reaching any conclusion as to an appropriate sentence, the history and characteristics of the defendant, good and bad alike, carry much weight. For the reasons that follow, Mr. Rao submits that each and every one of these considerations weighs heavily in favor of the sentence we have proposed.

A.    _The Nature and Circumstances of Mr. Rao's Offense_

The crime committed by Venkatesh Rao is presented accurately, if not in the detail needed to explain it, in paragraph 6 of the plea agreement, which is reprinted at page 3 of the presentence report. More importantly, Mr. Rao accurately portrays his own criminal conduct in his statement to the presentence writer, made a part of the presentence report at page 4, as well as in his letter to the Court. (Exhibit One) In these letters and statements he makes clear his acceptance of responsibility and deep remorse for his actions. It goes without gainsaid that, as wrong, indeed illegal, as it was for Mr. Rao to print and remove documents from his work and take them to his home, it would be just as wrong to ignore, when making a determination of the appropriate sentence, the unique circumstances of Venkatesh Rao's psyche and how that played into his thought process when printing and removing the documents. And this is especially true when there was no evil motive behind the taking.  And although a theft of a thing even if one had no desire to sell it for a profit is still illegal—think someone stealing a Picasso just to have it in

5

their own home, where the true owner is deprived of its use, its beauty in her own home—here, Mr. Rao did not take the papers to deprive the Federal Reserve of their use, he printed a copy of them, illegally, for his own enjoyment, for his own selfish reasons. Nonetheless, he does recognize that the papers he printed and removed from his place of employment could have fallen into the wrong hands; and that is one of the potential harms that his lapse of good judgment could have caused.

Aside from this one lapse in judgment, Mr. Rao has never before abused the trust placed in him by anyone, including society as a whole. He has expressed deep and heartfelt remorse. He has lived an otherwise law abiding, selfless life. The letters of support attached from his wife and former co-workers at the Securities and Exchange Commission and the Federal Reserve Board,[4] support the assertion that the instant offense does not reflect Mr. Rao's true character; and they, along with their descriptions of him as dependable, responsible, honest, courteous and forthcoming, support the conclusion that he poses no threat to society at large.

  B.     *The History and Characteristics of Mr. Rao*

The history and characteristics of Mr. Rao also support a sentence directed more towards a reminder that there are consequences for even minor crimes than one directed towards punishment.  Mr. Rao was born in 1953, the youngest of two sons born to the union of P.C. and Indira Rao. His father, an engineer, and his mother instilled in him and his brother the importance of education, hard work and high morals, including the value of honesty. As a child he was fortunate to have a mother who worked at home caring for the family and who was always supportive and constantly there for he and his brother. Mr. Rao studied hard and after our equivalent of high school, studied at the Indian Institute of Technology, where, in a five-year program, he earned a Bachelor of Technology in Mechanical Engineering.  Shortly thereafter he

---

[4] Attached jointly as Exhibit Two.

moved to the United States where he obtained, in 1977, a MS in Mechanical Engineering from S.U.N.Y. He later obtained an MBA and a PhD in Finance from the University of Florida, before moving to Texas to take a position at the University of Houston teaching a variety of business courses at both the undergraduate level as well as the business school to MBA and PhD candidates.

While teaching in Houston, Mr. Rao met and married Susan Chacko. Shortly after their marriage, Ms. Chacko received a job offer in Maryland and he moved here with her and took his first civil service position in 1992 at the Commodity Future Trading Commission. For the next 28 years he has worked in research and policy analysis at the Office of the Comptroller of the Currency, the SEC and the Federal Reserve Board of Governors.

Despite having an education and work history that would be the envy of most, he views his greatest accomplishments to be those as a husband and father. He and his wife will soon celebrate their 30th anniversary. They have two children, both of whom followed in their parents' footsteps and, with the help of their parents, excelled in school and later earned college degrees. Their oldest is a software engineer and their youngest a software developer. Needless to say, the children were taught the same values that Mr. Rao's parents taught him; and their happiness and success is what Mr. Rao views as his highest accomplishment.

The most important element of any discussion of Mr. Rao's personal characteristics is his willingness to help others. He is always there when needed, a nurturer who is caring, loyal and kind. Whether it is caring for his family or mentoring students during his years as a professor or younger workers at any of his positions as a senior civil servant, those who know Venkatesh Rao recognize that this conviction is an aberration from a lifetime of kindness, compassion and high morals. He is viewed as dependable, courteous and responsible.  These perspectives alone

support a sentence that does not include incarceration. *See United States v. Grober,* 595 F. Supp. 2d 382,408 (D.N.J. 2008) ("[The defendant's] family members and friends and neighbors described him without artifice and with great sincerity as a good and caring man. The existence of 'the history and characteristics of the defendant' is a cornerstone of the sentencing factors. It means that a life well-lived counts.").

    C.    *The Purposes of Sentencing*

As noted at the outset, there are certain purposes behind any criminal sentence. One purpose of sentencing is to reflect the seriousness of the offense and to provide just punishment for the offense. As discussed above, Mr. Rao understands that he committed a serious offense. As a law-abiding citizen, a committed son, brother, father and husband, a community member who is widely recognized for his devotion to others, Mr. Rao is mortified that he engaged in the conduct to which he pled guilty. He is sickened by the idea of even indirectly bringing scorn to his family, his friends or even his former employer; and this will require him to forever bear the heavy burden and shame of his conviction.  Thus, for this crime, once carefully examined, and this offender, whose life is otherwise without blemish, we submit that just punishment can easily be achieved without a prison sentence. Mr. Rao will forever be branded a thief and bear the consequences that label carries. And, regardless of the facts behind the crime, he will forever wear the scarlet letter of "thief," because anyone who reads of this crime will read "Theft of Government Property." Many toss about lightly the phrase "convicted thief" without understanding the true nature of such.  While the Court is no doubt aware of many of the collateral consequences the brand of "thief" carries, we feel compelled to mention a few that Mr. Rao will face. First, there is employment.  In the world of finance, private or governmental, any crime of moral turpitude, especially dishonesty, is an absolute bar to employment. In fact this is

not just conjecture. Mr. Rao, after retiring from the Federal Reserve, was offered a position at Freddie Mac as a senior manager. Upon his guilty plea he informed his employer, and was almost immediately terminated from the job. Mr. Rao is fortunate to have lived such a frugal life, saving and putting away for a rainy day, because, given what he does for a living, that rainy day may have arrived, as it is doubtful that he will ever work another day in his life—at least not in his chosen profession. With a theft conviction his days in finance are over. And he will not be able to return to a profession in teaching either. Universities are simply not hiring 67-year old "thieves." And, now officially retired, normally one could look forward to traveling the world, but his ability to travel can and will be severely restricted.[5] Moreover, the Court can consider the fact that Mr. Rao has been punished greatly already. His public reputation has been permanently tarnished by this criminal case. He has had to admit his actions to his family and friends. For this man, that disclosure is punishment of the highest order.

Another purpose of sentencing is to afford adequate deterrence—both specific and general—to criminal conduct. And in cases involving "theft of government (society as a whole) property" obviously the courts normally have a legitimate concern about turning such an offender loose in the community, which is an entirely separate purpose of sentencing -- to protect the public from further crimes of the defendant. Here they may be discussed together. Fortunately, there is sufficient evidence in this case to believe with a level of certainty that Mr. Rao will not re-offend. For 66 years he lived a life untarnished by anything, much less a criminal offense. A very low percentage of the world, all hyperbole aside, could put together a resume, either educational, familial or professional even closely matching that of Mr. Rao. And, each and

---

[5] Many countries are now either denying visas to individuals with convictions of moral turpitude or, as this office has seen with numerous clients, stopping the offender at the entry point of the country and making them board the next plane back to the United States. Even Canada is now closing its borders to some charged with misdemeanor offenses.

every one of the matters described above relating to punishment will definitely serve the dual role of deterrence. That deterrence, in this particular case, will certainly cause Mr. Rao to give serious thought to any action he takes in the future so as to avoid any future judgmental lapses. Thus, not only should the community feel safe, by the same token, the Court can be satisfied that Mr. Rao has been deterred. But more importantly his deterrence lies with the moral values he carries in his heart. He knows what he did was wrong.

And as to general deterrence, the simple fact is that Mr. Rao is a unique defendant, as are the particular facts of this individual's crime. The circumstances that led to this crime are as unusual as this writer has ever seen. The particular circumstances of this crime are such that should the Court impose a probationary sentence on Mr. Rao, in recognition of the unique mitigating circumstances that surrounded him, no defendant, even if s/he had the ability to "contemplate" a similar crime, will take comfort that he or she too will receive similar treatment if apprehended. General deterrence will be unaffected. Moreover, there is a moral limit on the extent to which the need for general deterrence can or should be borne on the shoulders of one individual.

In conclusion, Mr. Rao and his family and friends implore the Court to exercise its discretion and impose a sentence that will allow him to remain at liberty. Although the Court surely receives similar pleas in many cases, few, if any, of those cases present the uniquely mitigating facts that are before the Court in this matter. A probationary sentence for this particular offender is fully consistent with the longstanding goals of sentencing.

## **CONCLUSION**

This writer has lived a life taught by his parents, and passed along to his two children, that before taking any action of any consequence to ask one question: what good could come of

it? We posit that question now. What good could come from a period of incarceration of this man? The answer seems clear. Absolutely none. As demonstrated in the preceding pages, incarceration is not needed in this case to meet any of the recognized purposes of sentencing. This man's life as he knew it will never be the same. No good can come from incarceration, only harm to him. We implore the Court to let him walk from the courtroom (even if just figuratively) retaining at least some dignity as he attempts to put his life back in order.

**WHEREFORE** based on the foregoing reasons and any others that may appear to the Court, Mr. Rao respectfully submits that the following sentence is sufficient (and possibly even more than necessary) to meet all the goals of sentencing and is fair and reasonable, giving weight to the many positive factors in his life: Sentence Mr. Rao to a term of from 6 to twelve months of probation, order he pay the mandatory special assessment of $25.00 and impose a fine of $2,000.00.[6]

Date:  May 12, 2021

Respectfully Submitted,

/s/ G. Allen Dale
G. Allen Dale (Maryland Fed. Bar No.: 04058
Counsel for Venkatesh Rao
Law Offices of G. Allen Dale, PLLC
901 New York Avenue, N.W. Ste. 500 West
Washington, D.C. 20001
Telephone:  (202) 638-2900
Facsimile:  (202) 628-4177
gallendale@aol.com

---

[6] The Guideline fine table provides for a fine range of from $500 to $9500. U.S.S.G. § 5E1.2 (c)(3) We respectfully submit that the amount of the fine should be based upon the offense and not merely on Mr. Rao's ability to pay. We would have suggested that a fine of $500 would have been appropriate based on the offense, but the probation office has suggested a fine of $2000.00 and we will not oppose such a request.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of May, 2021, I will electronically file the foregoing Memorandum in Aid of Sentencing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.


_____/s/_____
G. Allen Dale